(Surrogate's Court, Cattaraugus County.  June, 1895.)

1. CONSTRUCTION OF WILL—LIFE ESTATE—DIRECTION TO MAINTAIN ESTATE—LIABILITY FOR DEBTS.
   Where testator gives his wife a life estate in his property, and in another clause of the will directs her to maintain the estate in as good condition as possible, she is not required to pay his debts out of the income given her.

2. SAME—RIGHT TO USE FARM PRODUCE.
   Where testator gives his wife a life estate in his farm, which is used for dairy purposes, she may use the grain and hay on hand at the time of his death, so far as it is necessary to carry on the farm.

3. EXECUTOR'S ACCOUNTS — SETTLEMENT INVENTORY—PAROL EVIDENCE TO EXPLAIN.
   On a settlement of an executor's accounts, it may be shown that amounts charged in the inventory as estate assets were part of the income to which the executor was entitled under the will.

Proceedings for the judicial settlement of the accounts of John F. Maack, as administrator with the will annexed of John C. Maack. John Pusback, as administrator of Mary Maack, a former executrix, made a claim for amounts paid by her for the benefit of testator's estate.    Decree allowing claim made.

John Mosher, for administrator.

Hudson Ansley, for administrator of Mary Maack estate.

DAVIE, S.    John C. Maack died at the town of Little Valley on the 25th day of July, 1888, leaving a will dated December 17, 1885, which was admitted to probate November 11, 1888.    The executor named in the will having renounced, proceedings were instituted which resulted in the appointment of Mary Maack, the widow, and John H. Merrow, as administrators with the will annexed.    Merrow died May 6, 1890, and Mary Maack April 23, 1893.    John F. Maack was appointed administrator de bonis non with the will annexed July 3, 1893.    Mary Maack died intestate, and letters of administration upon her estate were issued to John Pusback May 29, 1893. Subsequently Pusback filed a petition asking that the administrator, John F. Maack, show cause why he should not judicially settle his accounts; and upon the return of the citation issued thereon the said John F. Maack filed his petition for such judicial settlement, and subsequently his account, showing total receipts by him as such administrator of $1,858 and total disbursements of $1,041.51, leaving in his hands for distribution the sum of $816.49.    Mary Maack, during her administration upon the estate of the testator, paid out,

upon his debts, a considerable amount over and above the moneys coming into her hands from the assets of the estate, and it is claimed by her representative that such overpayment should be determined upon this settlement, and allowed out of the balance in the hands of the administrator with the will annexed before distribution among the legatees. No judicial settlement of the accounts of Merrow and Mary Maack, as administrators, was ever had. It would have been much more satisfactory and methodical had such settlement been made, and the rights of Mary Maack thereby definitely determined, instead of adjusting such rights upon this accounting; but inasmuch as no question of jurisdiction is raised, and all parties interested are before the court, it is proper to dispose of this claim at this time. There is no controversy over the amount paid out by Mary Maack as such administrator, but it is asserted that a portion of the money so expended by her was derived from a disposition of the assets of the estate, and, further, that under the provisions of the will, and the terms of the bequest to her therein contained, it was her duty to make these payments out of her individual estate.

The testator died possessed of a farm in the town of Little Valley, incumbered to some extent, and of personal property to the amount of about $1,700. The first item of the will is as follows:

"I grant, devise and bequeath unto my wife, Mary Maack, all my property, of every kind and nature, both real and personal, wherever the same may be, for and during the balance and remainder of her natural life."

After various other bequests, the testator, by the fourth item of his will, devised and bequeathed all the remainder of his estate, both real and personal, to his son, John H. Maack. The fifth item of the will is as follows:

"And I hereby direct and require my said wife, Mary Maack, at all times during her natural life to fully pay and satisfy all interest which may accrue upon any incumbrance that may exist upon my estate at the time of my decease, so that said incumbrance may not increase on account of said interest accumulating; and she shall also keep the buildings upon the real estate owned by me at the time of my decease insured fully, in a good and reliable insurance company, and keep the premiums duly paid, and shall keep and maintain my said estate in as good condition as possible, during the continuance of her natural life, consistent with her full enjoyment of the use of the same."

It is conceded that Mary Maack complied with all the requirements of the will relating to the payment of interest and insurance. But it is urged, in opposition to her claim, that, under the statement in the fifth item of the will to the effect that she should keep and maintain the estate in as good a condition as possible during the continuance of her life estate, it was her duty to pay the debts of the testator, and that the same were a charge upon the estate or interest devised to her. This claim is not tenable. The phraseology of the portion of the will referred to by no means expressly charges the payment of debts upon the widow's legacy, nor do the attendant facts and circumstances indicate any such design on the part of the testator. By the first item of the will the widow is given a clearly-defined interest, viz. a life estate in all the testator's property. An

interest given in one clause of a will cannot be affected by raising doubts from other clauses, but only by express words or undoubted implication.    Freeman v. Coit, 96 N. Y. 63.    Where an estate is given in one part of a will in clear and decisive terms, such an estate cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words of the clause giving the estate.    Roseboom v. Roseboom, 81 N. Y. 356; Clarke v. Leupp, 88 N. Y. 228.    The provisions of a will for the support and maintenance of a wife will receive the most liberal construction.    Thurber v. Chambers, 66 N. Y. 42–48.

After the appointment of Mary Maack and Mr. Merrow as administrators with the will annexed, they caused an inventory to be prepared and filed.    Among the effects inventoried are 38 dairy cows, 40 tons of hay, 2 tons of straw, 150 bushels of oats, 30 bushels of barley, and various other articles of farm produce upon the farm owned by the testator at the time of his death.    This produce was consumed by the widow and her tenant in the occupancy of the real estate.    It is asserted on behalf of the administrator, John F. Maack, that the widow should be charged with the value of the articles so consumed.    This claim presents an issue very similar to that determined in Re Yates, 99 N. Y. 95, 1 N. E. 248. In that case the testator gave to his widow all of his "estate, both real and personal, she to have and to hold the same and to receive and enjoy as her own property the rents, issues, and profits therefrom during life."    The testator was seized at the time of his death of two adjoining farms, used together as a dairy farm, and the personal property consisted of live stock upon the farms, and a quantity of hay, oats, corn, wheat, and potatoes.    The widow used and disposed of this farm produce, and, upon the settlement of the accounts of the executor, it was sought to charge him with the value of the articles so consumed, upon the ground that they belonged to the estate.    In determining this question the court of appeals says (page 99, 99 N. Y., and page 248, 1 N. E., of opinion):

"In giving to the widow this real and personal property for her enjoyment during life we think it was his intention that she should possess and use it in specie. It cannot be presumed that the testator expected these perishable articles would be preserved for the remainder-man, or taken from her by the executor for sale, and the interest or income only applied to her use. They were essential to the support of the stock and the carrying on of the farm, from which only the widow's maintenance was to come. * * * It cannot be implied that the testator wished his executor, at the moment of his death, to sell all the personal property and pay over to the wife only the interest which might accrue upon the proceeds, or that he intended to bestow upon her a farm without the means of making it useful, and so in effect break up her home while in words he was securing its continued enjoyment."

The rule seems well established that when the articles in question, the use of which are bequeathed for life, are of a wasting character, "quo ipso usu consumuntur," which might be exhausted in the lifetime of the tenant for life, the gift to the remainder-man must be taken subject to such possibility.    Then, again, the evidence affords a complete answer to this objection urged against the claim.    For some time prior to the death of the testator, the farm owned by

him, and upon which the personal property in question was produced, had been managed and occupied by a tenant under an agreement that such produce should be consumed upon the farm. This farm was used for dairying purposes, and the raising of hay and grain thereon was merely incidental to the prosperous prosecution of the principal enterprise. The consumption of such produce upon the farm was essential to maintain the soil in proper condition. So that, by the terms of the agreement under which the property in question was produced, and which agreement was made by the testator, and remained in force until after this produce was consumed, the articles referred to were expressly required to be used upon the farm. No suggestion is made that any portion of this produce was sold or removed from the farm by the widow. No claim is made but what at the death of Mary Maack there were the same number of cows remaining upon the place as at the death of the testator. The evidence indicates an increase rather than a diminution in the extent and value of the live stock. The various articles of farming tools and implements were also left in as good condition as could be expected in consequence of their use upon the place. So that it is entirely plain that nothing can be deducted from the claim of Mary Maack in consequence of the use or consumption of any of the articles above referred to. ' The inventory filed contains the following items: Cash on hand in bank, $296.86; note of C. H. Davis, $80.14; cash from Lambert Peterson, $59.76. These items constitute substantially all of the effects inventoried, aside from the stock, farming implements, and produce. The inventory was not completed until the 12th day of December, 1889. The appraisers who made such inventory testified: That they had no personal knowledge of the existence of any money or funds in the bank. That their only information upon that subject was hearsay in its character. That their understanding was that this money, wherever it might be, was the fund which had accumulated from the dairy productions between the death of the testator and the making of the inventory; in other words, it was the use or income derived from the estate, and under the will belonged to the widow.

It does not appear that the testator had any ready money at the date of his death. On the contrary, the opposite inferentially appears from the fact that, shortly before his death, testator borrowed money with which to pay small bills. Some evidence is also given to the effect that the item of cash from Peterson is erroneous; that in fact this demand against Peterson had been paid to the testator before his death, excepting the sum of $15, and that there was only that amount due thereon. The statements in the inventory are only presumptive evidence against the person filing it. They are simple prima facie evidence of the value of the assets. The statute expressly provides that such presumption may be overcome, and the statements in the inventory explained (Code Civ. Proc. § 1832), and it is entirely apparent that the inventory filed in this case is erroneous so far as it related to the item of cash in the bank and cash from Peterson. Moreover, it appears from an inspection of the inventory that the appraisers, in preparing the same, neglected to set

apart to the widow the $150 in money or other property to which she was entitled under the statute. The failure of the appraisers in this particular did not divest the widow of her rights, nor was it necessary to make an application to have such inventory amended. Such correction may and should be made upon the accounting, if not before. The statute provides a method of securing the correction of an inventory defective in this particular (Code Civ. Proc. § 2720), and it is expressly provided that the decree upon judicial settlement may award to the widow the same relief which might be afforded in a proceeding instituted under the section above cited (Id. § 2721). While the exact amount of money received by Mary Maack in her administration of the testator's estate is not definitely disclosed, yet it conclusively appears that the funeral expenses paid by her, in connection with the $150, by far exceed her receipts. A careful consideration of the entire evidence in the case fails to disclose any valid reason why the representative of Mary Maack, deceased, should not be fully reimbursed for all moneys advanced by her in payment of debts of testator. A decree will be accordingly entered herein judicially settling the accounts of the administrator, John F. Maack, as filed, and directing that the balance remaining in his hands after payment of commission and expenses of this settlement, he pay to John Pusback, as administrator of the estate of Mary Maack, deceased, on the amount due on her claim as determined by the findings filed herewith. Ordered accordingly.